# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### FRANKFORT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:22-cr-00006-GFVT-MAS-1** |
| **v.** | ) | |
| | ) | |
| **SEAN L. SPURLOCK,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DETENTION OPINION AND ORDER

The Indictment alleges that Defendant Sean Spurlock ("Spurlock") possessed with intent to distribute 50 grams or more of a methamphetamine mixture on March 25, 2022, in violation of 21 U.S.C. § 841(a)(1). [DE 1 (Indictment)]. The United States orally sought detention per 18 U.S.C. §§ 3142(f)(1)(C), and the Court conducted a detention hearing on May 12, 2022. [DE 7, 11]. The Court afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA"). Per Federal Rule of Appellate Procedure 9(a) and, for the reasons discussed in this opinion and as stated on the hearing record, the Court grants the Government's motion for detention.

## I.     BRA FRAMEWORK

Based on the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the

1

defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence of flight risk. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y],"

the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context.  18 U.S.C. § 3142(f).  The key is simply evidentiary reliability and accuracy.  *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998).  Given hearing informality, the Court properly considers a wide range of proof.  The nature and quality of proof, though, impacts its probative value and weight in the detention calculus.  The § 3142(g) factors ultimately drive the overarching analysis.

## II.   ANALYSIS

As the Court's ruling and discussion on the record reflects, Spurlock rebutted the presumption of detention as to both flight and/or nonappearance as well as danger risk.  However, the Government met its burden on both issues, requiring detention under the BRA.  The United States showed by a preponderance of the evidence that no conditions can reasonably assure that Defendant will not flee and that he will appear at proceedings in this case.  It also established by clear and convincing evidence that no conditions can reasonably assure community safety.  The Court therefore grants the United States' motion for detention.

### A.   FLIGHT OR NONAPPEARANCE RISK[1]

To rebut the presumption, Spurlock proffered that he had recently been released pretrial on related state charges pending in Shelby County, Kentucky, and that he had appeared as required for a hearing in that case, despite being arrested on other unrelated charges immediately following

---

[1] Though the terms are not identical, the record evinces both flight and nonappearance risks, and the considerations are essentially coextensive in this case.  The Court uses the terms interchangeably in this context.

it.  [Pretrial Services Report ("PSR") at 6-7].[2]  However, it does not appear from the offense circumstances as reflected in the PSR that he anticipated arrest following the proceeding, removing any inference that he appeared despite serious incentive to flee or fail to appear.  Nonetheless, the record confirms that Spurlock appeared at the hearing as ordered.  Spurlock also emphasized that he has lived in the community at his grandmother's residence for more than a decade and that he would be welcome to return to the property to reside inside the home with his grandmother, who is retired and could monitor him.  Finally, he noted that he is incentivized to comply with release terms because of ongoing child custody proceedings in which he is motivated to participate.

The Court finds that this information is sufficiently credible and probative on the issue of flight and/or nonappearance and concludes that it, together with the availability of home detention, GPS monitoring, and drug testing conditions, rebuts the presumption.  In response, the Government must show by a preponderance of the evidence that Defendant continues to pose a flight risk and that conditions cannot reasonably address it.  The Court finds that it has done so.

In evaluating flight risk, the Court first considers the nature and circumstances of the offense charged, trafficking in 50 grams or more of a methamphetamine mixture.  18 U.S.C. § 3142(g)(1).  Based on the accompanying presumption of detention, Congress has determined that this sort of controlled substance offense poses heightened risk of flight or nonappearance.  *Id.* § 3142(e)(3)(A).  Though rebutted, it persists as a flight consideration.  *Stone*, 608 F.3d at 945.

---

[2] There was some uncertainty at the detention hearing as to whether Shelby County would seek custody of Spurlock on those unrelated charges (possession of suboxone and traffic offenses) and as to whether Spurlock had actually taken the steps necessary to secure release on them, including posting of a monetary bond.  The United States advised that Shelby County intended to defer its prosecution of the charges given the mirroring federal case and that it would not seek his custody.  All parties agreed to go forward with the detention hearing, at least on a provisional basis.  The Court's detention ruling in this case moots need for further inquiry into the Shelby County charges at this stage.

Additionally, the charged offense carries significant penalties, including a mandatory minimum imprisonment term of five years. 21 U.S.C. § 841(b)(1)(B)(viii). These penalties may motivate flight, to a degree. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties" may "provide a strong incentive to flee"). Finally, the circumstances of the alleged offense, as outlined in the PSR in relation to the underlying state arrest on March 25, 2022, illustrate the extent of Defendant's serious substance use disorder problems. [PSR at 6]. For these reasons, the first factor firmly favors detention.

The Court next considers the weight of the evidence that Defendant poses a risk of flight or nonappearance. 18 U.S.C. § 3142(g)(2); *see United States v. Sykes*, No. 04-cr-80623, 453 F. Supp. 3d 1011, 1015–16 (E.D. Mich. Apr. 13, 2020) (citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010)) (noting that, in this Circuit, the § 3142(g)(2) factor looks only to the weight of the evidence that the defendant is a flight risk or a danger); *accord United States v. Sanders*, 466 F. Supp. 3d 779, 785 (E.D. Mich. 2020). Here, the pertinent flight risk evidence stems from Defendant's history of fleeing and failing to appear and of violating court-imposed conditions, his substance use disorder, and his lack of steady employment. Consideration of the second factor therefore overlaps with the third, Defendant's history and characteristics. 18 U.S.C. § 3142(g)(3)(A) (considering the defendant's employment, history relating to drug or alcohol abuse, criminal history, past conduct, and record concerning appearance at proceedings). Both factors collectively weigh in favor of Defendant's detention based on flight risk.

In 2017, Defendant was charged with failure to return from a furlough (originally charged as escape). [PSR at 6]. In March of 2022, Spurlock was convicted of fleeing police, and his sentence was conditionally discharged for two years. [*Id.*]. It is aggravating that Defendant was subject to conditional release in that case at the time he allegedly committed the instant offense.

*See* 18 U.S.C. § 3142(g)(3)(B) (considering whether a defendant was on conditional release at the time he allegedly committed the charged offense).  Spurlock also has prior charges and extradition warrants from Wisconsin in 2016 and from Colorado in 2014; Defendant's presence in those states at those times is unexplained.  [PSR at 7].  He further has several prior violations of conditional release and related warrants over the past decade in multiple states, including Kentucky, Illinois, and Indiana.  This information demonstrates substantial geographic mobility and widespread criminal activity as well as a propensity to violate court-ordered conditions.  It thus would tend to show that Defendant poses a flight risk.

Additionally, the extent of Defendant's substance use disorder suggests flight and/or nonappearance risk.  Spurlock admitted that he began using hydrocodone at age 15 or 16 and that he used it occasionally, with his most recent use immediately preceding his arrest on the related state charges on March 25, 2022.  [PSR at 3].  He also admitted to significant methamphetamine use, beginning at approximately age 17 and continuing through the date of his related state arrest, when he was found to be under the influence of methamphetamine.  [*Id.* at 3, 6].  Spurlock's criminal history confirms that he has struggled with use of methamphetamine and other illicit substances throughout his adult life, as it reflects several charges and convictions for methamphetamine and other controlled substances.  Though the Court appreciates his candor in self-reporting some of this substance use disorder history, Defendant's serious, ongoing methamphetamine addiction indicates some nonappearance and flight risks.  *See United States v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) (observing that "a frequent drug user defendant constitutes a flight risk") (quotation marks omitted).  Also aggravating is Spurlock's lack of consistent or current employment.  *See United States v. Stidham*, No. 3:10-CR-79, 2010

WL 2639925, at *3 (E.D. Tenn. June 25, 2010) (finding that a defendant's lengthy unemployment favors detention).

There is thus substantial evidence that Defendant poses a flight or nonappearance risk, and the second and third BRA factors weigh in favor of detention in this case. Nor do the mitigating aspects of Defendant's characteristics or the availability of home detention and GPS monitoring conditions assuage the relevant concerns. Although Defendant has primarily resided in the local area for many years, the various locations of his criminal charges and convictions during this period, many drug-related, demonstrate some level of transience. Additionally, much of Defendant's criminal history has occurred while he was living on his grandmother's property, where he proposes to return if released. Accordingly, though the Court appreciates her willingness to assist in monitoring Spurlock and credits her intent as genuine, the practicability and effectiveness of this oversight mechanism in mitigating flight is questionable. That Defendant would be permitted to reside inside the home does not negate these concerns. Finally, neither the availability of drug testing nor Defendant's incentive to comply with release terms would be sufficient to assure his appearance. The record confirms that Defendant has not been deterred by court-imposed conditions or the pendency of custody proceedings in the past, and the Court is not persuaded that he would be adequately deterred in this instance.

For these reasons, the Court finds that the Government has shown by a preponderance of the evidence that no conditions can reasonably assure that Defendant would not flee and that he would appear in this case. Detention on this basis is appropriate under the BRA.

## B.   DANGER RISK

As stated on the record, the Court found that Spurlock also overcame the presumption of detention as to danger risk based on the proffered facts—namely, his ability to reside with his

grandmother, his interest in complying with the terms of release to ensure he can participate in custody proceedings, and the availability of home detention and monitoring conditions. However, evaluating the BRA factors in combination, the Court finds that the United States has nonetheless shown by clear and convincing evidence that the proposed conditions would not adequately assure community safety in this case.

The first factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance[.]"  18 U.S.C. § 3142(g)(1).  The charged offense involves possession with intent to distribute an aggravated quantity (50 grams or more) of a methamphetamine mixture, and the presumption of detention that arises in connection with it remains a pro-detention consideration.  There is little additional information in the record concerning the alleged circumstances of the offense, beyond the description of the state arrest circumstances in the PSR.  [PSR at 6].  Though these details somewhat enhance the danger risk insofar as they highlight the depth of Defendant's substance use disorder and vulnerability to methamphetamine in particular, they do not involve weapons or violence.  Still, alleged drug trafficking in the quantities alleged here is categorically dangerous under the BRA, and this factor weighs in favor of detention on danger grounds.  *See United States v. Bucio*, No. CR 5:17-055-DCR, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (recognizing that "the nature and circumstances of the offense in issue weigh[ed] in favor of" detention where "they ar[o]se in the context of a large drug trafficking scheme").

The next factor gauges "the weight of the evidence against the person."  18 U.S.C. § 3142(g)(2).  "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt."  *Stone*, 608 F.3d at 948.  As with the flight issue, consideration of the danger evidence against Spurlock blends with consideration of the third factor, Spurlock's

8

history and characteristics.  18 U.S.C. § 3142(g)(3).  The salient danger proof in this case stems from the nature of the instant offense as discussed, Spurlock's escalating and overlapping criminal history and personal substance use disorder, and Spurlock's history of violating conditions of release.  These facts suggest serious risk that Defendant would return to trafficking and other drug conduct if released, despite conditions.  *See Stone*, 608 F.3d at 947 n.6 ("To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community."); *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) (emphasizing that "the danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community").

Over the past 10 years, Defendant has amassed a burglary conviction (2013), vehicle theft convictions (2016), several convictions for possession of methamphetamine and other controlled substances (primarily in 2017, prior to a term of incarceration), a conviction for fleeing police (2021), and controlled substance possession charges (2022) unrelated to the state case underlying the instant matter.  [PSR at 3-7].  Defendant further has numerous warrants and violations of conditions of release related to these cases, as reflected in the PSR.  The extent of Defendant's criminal history and drug-related conduct intersects problematically with the nature of the instant offense and with Defendant's personal substance use disorder, heightening the risk that Defendant may return to such conduct if released pretrial.  Defendant's history of noncompliance with conditions of release by committing new criminal conduct and other violations further suggests substantial risk that he may return to drug-related criminal activity.  *See* 18 U.S.C. § 3142(g)(3)(A) (considering the defendant's past conduct, history relating to drug or alcohol abuse, and criminal history).  Additionally, as is aggravating under the BRA, Spurlock was subject to a conditionally discharged prison sentence for the fleeing conviction at the time he allegedly committed the instant

offense (a mere four days after sentencing in the former matter).  [*Id.* at 6].  *See id.* § 3142(g)(3)(B).  The second and third BRA factors thus favor detention based on danger risk.

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g)(4).  Though the instant alleged offense is nonviolent, Spurlock's history of drug involvement and the quantity and type of controlled substance at issue here highlight the danger that may result if Defendant is released and returns to such activity.  And concerningly, Defendant's poor track record of compliance with conditions gives the Court little confidence that they would be effective disincentives in this instance.  There is significant risk that Defendant would engage in criminal conduct on release, undeterred by conditions or potential consequences, as his record to date demonstrates.  The fourth factor therefore weighs at least slightly in favor of detention.

Accordingly, all four BRA factors support pretrial detention based on danger risk in this case.  Nor could the available conditions reasonably address that risk.  Foundationally, Defendant has a demonstrated propensity for noncompliance.  Further, the quantity of methamphetamine alleged to be involved in this case and Defendant's history of methamphetamine offenses indicate that he is familiar with and has widespread connections (both local and out of state) in drug trafficking organizations.  The Court therefore is not persuaded that conditions, including home detention, electronic monitoring, and drug testing, would be effective to reasonably assure in a prospective sense that Defendant would not engage in such conduct if released to his grandmother's property, particularly given his personal vulnerability to methamphetamine.  *United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the drug distribution scheme from his home).

Moreover, the proposed release location is concerning as Defendant has resided on that property (albeit not inside of the main residence) while engaging in criminal activity.[3]  Similarly, as discussed, the Court is not convinced that Defendant's interest in participating in custody proceedings with his children would motivate compliance where it has failed to do so in the past.

The Court thus finds that the United States has shown by clear and convincing evidence that the available conditions would not reasonably assure that Defendant would not pose a danger to others or to the community if released.  Detention on this basis is therefore also warranted.

### III.   <u>CONCLUSION</u>

For the stated reasons, the Court finds that Defendant has rebutted the presumption as to both flight and/or nonappearance as well as danger risk.  However, the United States has shown by a preponderance of the evidence that the available conditions would not reasonably assure Defendant's appearance, and it also has shown by clear and convincing evidence that such conditions could not reasonably assure community safety.  Detention is therefore required.

Accordingly, as previously held on the record, the Court **GRANTS** the United States' oral detention motion.  Defendant shall remain in custody pending trial in this matter.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

---

[3] The United States has not argued that Defendant necessarily was distributing drugs from or on his grandmother's property.  Nonetheless, to the extent the defense recommended that location for release because it would offer monitoring and oversight assurance, the Court discounts its value.  Though the Court appreciates Defendant's grandmother's willingness to assist and credits her intent as genuine, there is little evidence that such oversight would be practicable or effective, beyond her retired status and general availability.  Defendant did not offer her as third-party custodian, and she did not appear at the hearing; there is little information in the record concerning her capacity to monitor or influence Defendant's conduct.  Accordingly, given Defendant's long-term residence at that location while engaging in significant, varied criminal activity, and in light of the other danger evidence, the Government has shown clearly and convincingly that release there would not reasonably assure cessation of criminal conduct.

Entered this the 23rd day of May, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge